# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2012

No. 12-60220

Lyle W. Cayce
Clerk

DEBORAH KEEN,

Plaintiff-Appellant,

v.

MILLER ENVIRONMENTAL GROUP, INC.;
AEROTEK, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi, Southern Division

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant, Deborah Keen appeals the district court's grant of summary judgment in favor of Defendants-Appellees, Miller Environmental Group ("Miller") and Aerotek on her negligent hiring claim under Mississippi law. For the reasons provided below, we AFFIRM.

## I. FACTS AND PROCEEDINGS

On April 20, 2010, the *Deepwater Horizon* drilling rig exploded in the Gulf of Mexico ("Gulf"). The explosion caused, among other things, a 152-day leak of at least 93.5 million gallons of crude oil from the Macondo well into the Gulf.

As a result of the explosion, numerous sites along the Gulf Coast required emergency cleanup efforts. One of those cleanup sites was in Pascagoula, Mississippi. Miller, a New Jersey corporation, was a contractor at the

No. 12-60220

Pascagoula cleanup site. Miller subcontracted out its staffing to Aerotek, a Virginia corporation.

On May 17, 2010, Rundy Robertson applied to Aerotek to be a technician at the Pascagoula cleanup site. The role of a technician was to serve as a general laborer, manually removing tar balls from the coast. Robertson had a lengthy criminal history, including convictions for (i) cruelty to a child in the first degree; (ii) robbery; and (iii) contributing to the delinquency of a minor. The third conviction had required Robertson to register as a sex offender, which he failed to do. Additionally, Robertson had previous charges for (i) simple battery; (ii) sexual battery; (iii) forcible rape; and (iv) attempted first degree murder. As part of his application, Robertson submitted a signed consent for Aerotek to conduct a background check. However, he stated in his application that he had no criminal history. Aerotek hired Robertson without conducting the background check. It assigned him to the Miller contract in Pascagoula.

Like Robertson, Keen joined Aerotek as a technician. Aerotek also assigned her to the Miller contract in Pascagoula.

On June 20, 2010, Keen fell ill during the workday. Robertson, by chance, was scheduled to work only a half-day that day. He offered to drive her home after they both had clocked out of work. Upon arriving at her home, Keen alleges that Robertson forcibly raped her. A grand jury declined to indict Robertson for the alleged crime.

Keen filed suit against Miller and Aerotek, in Mississippi state court, for negligent hiring, retention, training, and entrustment. Miller and Aerotek subsequently removed the case to federal court.

Ultimately, Keen dropped her negligent training and entrustment claims. Miller and Aerotek moved separately for summary judgment on the remaining negligent hiring and retention claims. The district court granted the two

2

No. 12-60220

motions on January 16, 2012, and entered final judgment against Keen on February 27, 2012.

On appeal, Keen pursues only her negligent hiring claims. First, Keen argues that Mississippi law imposes a duty on employers to conduct criminal background checks, at least within the factual circumstances of this case. Second, Keen argues that Miller and Aerotek breached self-imposed duties by failing to comply with purported internal policies that required them to conduct background checks on all new hires. Finally, Keen relies on the report of a human resources expert and on the testimony of a corporate representative for Miller, both of which she had offered to the district court as evidence of industry practice pertaining to background checks. Keen argues that this evidence created a genuine issue of material fact as to whether Miller and Aerotek negligently breached a duty of care owed to her by hiring Robertson without conducting a background check.

After careful review of Keen's claims, we conclude that Mississippi law simply does not support her first two arguments. Furthermore, Keen offers virtually no authority for the proposition that Miller and Aerotek had a duty to conduct criminal background checks on Robertson. Accordingly, there is no genuine issue of material fact as to the existence of that duty. We thus AFFIRM the district court's grant of summary judgment in favor of Miller and Aerotek.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied, and we view the evidence in the light most favorable to the nonmoving party." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (citation omitted). The Court affirms "if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(a).

No. 12-60220

"We review the district court's findings of fact for clear error." *Gilbane*, 664 F.3d at 593 (citation omitted).

In this diversity action, we apply Mississippi law as interpreted by the Mississippi state courts. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). Here, in the absence of on-point Mississippi law, "[o]ur primary obligation is to make an *Erie* guess as to how the [Mississippi] Supreme Court would decide the question before us." *Gilbane*, 664 F.3d at 593 (citation omitted); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (per curiam) (citation and internal quotation marks omitted).

"We consider [Mississippi] Supreme Court cases that, while not deciding the issue, provide guidance as to how the [Mississippi] Supreme Court would decide the question before us." *Gilbane*, 664 F.3d at 594 (citation and internal quotation marks omitted). "Though the decisions and dicta of the [Mississippi] Supreme Court weigh more heavily in our *Erie* analysis, we also consider those decisions of [Mississippi] appellate courts in determining how the [Mississippi] Supreme Court would rule on this issue." *Am. Int'l Speciality Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 566 (5th Cir. 2010). "We are bound by our own precedent interpreting [Mississippi] law unless there has been an intervening change in authority. *Gilbane*, 664 F.3d at 594 (citations omitted).

## III. DISCUSSION

A claim for negligent hiring under Mississippi law requires "a finding of duty, breach of duty, causation and damage." *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (Miss. 2005) (en banc).[1] "To prevail

---

[1] With respect to Keen's negligent retention claims, the district court determined that the alleged rape occurred outside the scope of either Keen or Robertson's employment. Keen does not pursue her negligent retention claims on appeal and, therefore, does not challenge

No. 12-60220

. . . a plaintiff must first prove the existence of a duty." *Enter. Leasing Co. S. Cent., Inc. v. Bardin*, 8 So. 3d 866, 868 (Miss. 2009) (citation omitted). "Whether a duty exists in a negligence case is a question of law to be determined by the court." *Belmont Homes, Inc. v. Stewart*, 792 So. 2d 229, 232 (Miss. 2001) (citation omitted).

In hiring an employee, an employer has a duty to "exercise a degree of care commensurate with [the] nature and danger of the business in which [the employer] is engaged and the nature and grade of service for which the [employee] is intended." *Eagle Motor Lines, Inc. v. Mitchell*, 78 So. 2d 482, 487 (Miss. 1955) (emphasis, citation, and internal quotation marks omitted). Whether an employer's knowledge of an employee's incompetency was actual or constructive, the employer "is chargeable with knowledge of the incompetency . . . if by the exercise of due or reasonable care or diligence [the employer] could have ascertained such incompetence." *Id.* (emphasis, citation, and internal quotation marks omitted).

Recent cases have further clarified this duty of an employer to exercise reasonable diligence to ascertain the competency of a prospective employee. In *Jones v. Toy*, the Mississippi Supreme Court explained that the relevant inquiry is whether the employer "knew or should have known of the [employee's] incompetence." 476 So. 2d 30, 31 (Miss. 1985) (citations omitted). A year later, the U.S. District Court for the Southern District of Mississippi directly extended *Jones* to the context of an employer's negligent hiring liability for an employee's

---

that determination. Since we ultimately conclude that Keen did not establish that Miller and Aerotek owed her a duty to inquire into Robertson's propensity for violence, by conducting a pre-employment criminal background check, we need not reach whether Miller and Aerotek's failures to conduct such a background check caused her alleged rape. While, on the one hand, the district court's unchallenged determination might weigh into the negligent hiring causation analysis, we note that the "outside the scope of employment test" pertains to the question of Miller and Aerotek's vicarious liability for Robertson's intentional tort, an altogether distinct cause of action that Keen did not pursue.

No. 12-60220

intentional tort.  *See Thatcher v. Brennan*, 657 F. Supp. 6, 10-11 (S.D. Miss. 1986).  The *Thatcher* court looked to whether the employer knew or should have known of the employee's "propensity for violence."  *Id.* at 11.

Finally, in *Doe ex rel. Brown v. Pontotoc County School District,* the Mississippi Court of Appeals stated that, to hold an employer liable for injuries inflicted by its employee, a plaintiff must prove that (i) the employer had actual notice of the employee's incompetence or unfitness; or (ii) the employer's "situation was such as to cast upon [the employer] the duty of inquiring" and the employer could have discovered the employee's incompetence or unfitness "by proper diligence."  957 So. 2d 410, 416-17 (Miss. App. 2007) (citing, *inter alia*, *Jones*, 476 So. 2d at 31; *Eagle*, 78 So. 2d at 486-87).

Here, the district court assumed, for purposes of ruling on Miller and Aerotek's summary judgment motions, that Robertson had a propensity for violence.  Furthermore, it is undisputed that neither Miller nor Aerotek had actual knowledge of that propensity.  Therefore, at issue is whether Miller or Aerotek should have known of Robertson's propensity for violence.  *See Thatcher*, 657 F. Supp. at 10-11.

Keen presents three arguments on appeal as to why Miller and Aerotek should have known of Robertson's violent propensity:  (i) that Mississippi law imposes a duty on employers to conduct criminal background checks, at least within the factual circumstances of this case; and (ii) that Miller and Aerotek had internal policies to conduct background checks on all new hires, and that those policies created duties that Miller and Aerotek dispositively breached by failing to comply with the policies.[2]  Keen also contends that (iii) even if we reject

---

[2] We need not examine the actual language of Miller and Aerotek's respective policies. For the limited purpose of addressing Keen's proposition that failure to comply with internal policies is dispositive evidence of breach of duty, we assume that the policies indeed did require Miller and Aerotek to conduct background checks on all new hires.

her first two arguments, disposition on summary judgment was inappropriate because the report of Keen's expert and the testimony of Miller's corporate representative created a genuine issue of material fact as to whether Miller and Aerotek should have known of Robertson's propensity for violence.

Keen's first argument, in essence, amounts to a theory of negligence *per se*. "Negligence per se renders a defendant liable without proof of reasonable care when the plaintiff proves the defendant violated an applicable statute." *Dooley v. Byrd*, 64 So. 3d 951, 960 (Miss. 2011) (citation omitted). If such a statute applies, the defendant is negligent merely for violating it. *Id.* (citations omitted). However, the plaintiff still must prove causation and damages. *Id.* (citations omitted).

Here, there was no statute for Miller and Aerotek to have violated. However, if Mississippi common law *does* impose a duty to conduct background checks, and Miller and Aerotek did not conduct them, then our inquiry as to liability similarly would end there. Miller and Aerotek would be liable *per se*, for their breach of the applicable duty, whether or not they exercised reasonable care. Under such circumstances, summary judgment would have been inappropriate, and we would remand to the district court for further proceedings on causation and damages.

We address Keen's arguments in turn.

**A.     Whether Mississippi law imposes a duty on employers to conduct criminal background checks, at least within the factual circumstances of this case.**

No. 12-60220

This question is one of first impression in Mississippi.[3]   However, numerous other jurisdictions have addressed it, as has Section 213 of the Restatement (Second) of Agency, which the Mississippi Supreme Court has "expressly quoted and adopted." *Foradori v. Harris*, 523 F.3d 477, 486-87 (5th Cit. 2008) (citing *Tillman ex rel. Migues v. Singletary*, 865 So. 2d 350, 353 (Miss. 2003) (en banc) (citing Restatement (Second) of Agency § 213 (1958))).   The unanimous rule, with only minor and nuanced deviation, is that:  "One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation."  Restatement (Second) of Agency § 213 cmt. d.

Here, it is undisputed that Aerotek hired Robertson to work on the Miller contract to remove tar balls from the Gulf Coast.  Nothing about the nature of that work could have suggested to Aerotek or Miller that Robertson was likely to subject Keen to the risk of assault, or was otherwise uniquely incompetent to perform the work.  If a criminal background check were necessary to screen for indicia that a manual laborer might assault a co-worker, it is difficult to envision a fact pattern in which a background check would not be necessary.  Of course, the unanimous caselaw from around the country says that there is no such generalized duty on employers, to conduct pre-employment background checks on all new hires, irrespective of the particular circumstances of their prospective employments.[4]

---

[3] In her briefs, Keen advances her argument concerning this question solely with citations to Mississippi cases discussing an employer's obligations to act with "due care," *Jones*, 476 So. 2d at 31, and "proper diligence," *Pontotoc Cnty.*, 957 So. 2d at 417 (citation and internal quotation marks omitted).  Especially in light of the proceeding analysis, we decline to infer a generalized duty on employers to conduct criminal background checks on all prospective employees merely from the *sui generis* language cited by Keen.

[4] *See, e.g.*, *Kendall v. Gore Props., Inc.*, 236 F.2d 673, 678 (D.C. Cir. 1956); *Raleigh v. Performance Plumbing & Heating, Inc.*, 130 P.3d 1011, 1016-17 & n.6 (Colo. 2006); *Garcia v.*

No. 12-60220

This conclusion is strengthened by the fact that Mississippi's legislature has mandated that employers conduct criminal background checks on all new hires within certain specified fields. *See, e.g.*, Miss. Code Ann. §§ 37-9-17 (substitute teachers), 43-11-13(5)(b) (health care facility employees); *see also id.* §§ 73-17-11, 73-21-85 (conditioning the award of a nursing home administrator's license and a pharmacist's license, respectively, on the results of a criminal background check). If Mississippi's legislature intended to rely on common law principles to impose a duty on employers to conduct criminal background checks on all employees, it would not have resorted to statutes to impose them in the specified fields noted above. Similarly, by not specifying manual labor as a field requiring background checks, Mississippi's legislature created the strong inference that it did not intend to mandate them for all new hires in that field.

As an *Erie* court, we are especially hesitant to impose a generalized common law duty to conduct background checks under Mississippi law when (i) no prior Mississippi precedent directly imposes such a duty; (ii) the Mississippi Supreme Court has expressly adopted Section 213 of the Restatement (Second) of Agency, which rejects such a duty; (iii) no other jurisdiction imposes such a duty in comparable circumstances; and (iv) Mississippi's legislature has imposed a statutory duty to conduct background checks in certain specified fields, but not in the instant one.

---

*Duffy*, 492 So. 2d 435, 441 (Fla. Ct. App. 2d Dist. 1986); *Worstell Parking, Inc. v. Aisida*, 442 S.E. 2d 469, 471 (Ga. Ct. App. 1994) (citation omitted); *Schmidt v. HTG, Inc.*, 961 P.2d 677, 695 (Kan. 1998); *Evans v. Morsell*, 395 A.2d 480, 484 & n.5 (Md. 1978); *Foster v. Loft, Inc.*, 526 N.E. 2d 1309, 1313 & n.8 (Mass. Ct. App. 1988); *Ponticas v. K.M.S. Invs.*, 331 N.W. 2d 907, 912-13 (Minn. 1983) (citations omitted); *Hollingsworth v. Quick*, 770 S.W. 2d 291, 294 (Mo. Ct. App. W.D. 1989) (citation omitted); *Moricle v. Pilkington*, 462 S.E. 2d 531, 534 (N.C. Ct. App. 1995) (citation omitted); *Rozzi v. Star Pers. Servs.*, No. CA2006-07-162, 2007 WL 1531427, at *3 (Ohio Ct. App. May 29, 2007) (unpublished); *Iverson v. NPC Int'l, Inc.*, 801 N.W. 2d 275, 279-80 (S.D. 2011).

No. 12-60220

Accordingly, Keen's first argument, that Mississippi law imposes a duty on employers to conduct criminal background checks, at least within the factual circumstances of this case, is unavailing.[5]

## B. Whether non-compliance with internal corporate hiring policies is dispositive evidence of negligence under Mississippi law.

Keen next argues that Miller and Aerotek's respective internal policies, which purportedly require background checks on all new hires, created duties that they dispositively breached by failing to comply with the policies. In making this argument, Keen relies almost exclusively on language from a 1942 opinion of this Court:

> The evidence shows that it was the rule and custom in the Montgomery, Ward & Company store to keep the aisles between the counters clear "and not to place a box or carton in the aisle during business hours." This rule was a standard of care set up by the defendant itself, but this standard of care was departed from in the case at bar.

*Phillips v. Montgomery Ward & Co.*, 125 F.2d 248, 249 (5th Cir. 1942).

Admittedly, *Phillips* could be read as treating the defendant department store's non-compliance with its internal policy, to keep its aisles clear during business hours, as evidence dispositive of breach of duty. However, *Phillips* also could be read as treating the department store's non-compliance as evidence merely *suggestive* of breach of duty. At no point in *Phillips* did this Court expressly state, one way or the other, whether the department store's non-compliance was dispositive or merely suggestive. Fortunately, we need not reach a definitive interpretation of the language from *Phillips* because subsequent

---

[5] In reaching this conclusion, we need not address Miller and Aerotek's arguments that the exigent circumstances surrounding the *Deepwater Horizon* explosion, and the resultant Macondo well leak, act as a factor mitigating any breach of a duty to conduct background checks on all prospective hires. Furthermore, we need not address Aerotek's arguments concerning the potential conflict of such a generalized duty, especially if an adverse background check would jeopardize the prospective hire's employment, with Title VII of the Civil Rights Act of 1964 and its implementing regulations.

Mississippi cases, and subsequent cases from this Court applying those Mississippi cases, have made clear that a defendant's non-compliance with its internal policies is but one factor in the breach of duty analysis.[6]

In *Steele v. Inn of Vicksburg, Inc.*, a hotel had an internal policy to treat the water in its pool, or to close the pool, if the water became too cloudy. *See* 697 So. 2d 373, 374-76 (Miss. 1997). On a busy weekend in which the hotel hosted a youth soccer tournament, its management declined to treat the pool, which allegedly was cloudy, because, in the short term, the treating chemicals would have increased the pool's cloudiness. A young boy drowned after his adult chaperone failed to observe him sink to the bottom of the pool. At trial, evidence suggested that the chaperone's negligent supervision, or the boy's own consumption of a substantial amount of food shortly before swimming, may have been contributing causes to his drowning. The jury declined to find the hotel negligent on account of its non-compliance with the internal policy, despite "ample evidence" that the pool water was in fact cloudy. *Id.* at 377.

The Mississippi Supreme Court rejected a sufficiency of the evidence challenge by the boy's mother and affirmed the jury's verdict. *See id.* In doing so, the court explained that there was sufficient evidence for the jury to have found that the hotel was negligent or to have found that the hotel was not negligent. *See id.* While the court did not expressly discuss whether non-compliance with the internal policy was dispositive evidence of breach of duty, its rejection of the mother's sufficiency of the evidence challenge necessarily eschewed such a theory. After all, if non-compliance with the internal policy was dispositive as to the hotel's breach then, by definition, the jury's verdict would have been contrary to the weight of the evidence.

---

[6] Accordingly, we also need not address whether *Phillips* is distinguishable, regardless, because it involved premises liability to a business invitee rather than negligent hiring liability to a second employee.

No. 12-60220

More recently, in *Boyd Tunica, Inc. v. Premier Transportation Services, Inc.*, the Mississippi Court of Appeals addressed a casino shuttle operator's non-compliance with its internal policy requiring seatbelt usage by passengers. *See* 30 So. 3d 1242, 1249-54 (Miss. Ct. App. 2010). Mississippi law did not require shuttle passengers to have worn seatbelts. In a suit between the casino and the shuttle operator, following an accident involving one of the shuttles, the casino alleged that the operator's non-compliance with its internal seatbelt policy was dispositive evidence of breach of duty. The court rejected the casino's argument, explaining that "[i]t is counterintuitive to suggest that the law would impose liability on [the operator] for violating its seat-belt policy when, in this instance, the law does not require that [the operator] even provide seat-belt restraints." *Id.* at 1250. The court concluded that "the law in [Mississippi] is that a breach of one's internal policies may be considered in determining whether one has exercised the appropriate standard of care" but that "we see no reason why [the operator] should be punished for insisting that its passengers wear seat belts, even though they are not required by law to do so." *Id.* at 1253-54 (referring, among other authorities, to *Steele*, 697 So. 2d 373).

Thus, in Mississippi, non-compliance with an internal policy is evidence that is probative of, but not dispositive of, breach of duty. *See id.* at 1253-54. As an *Erie* court, *Steele* and *Boyd Tunica* are conclusive on our analysis in the instant case, even if *Phillips* could have been read to stand for our recognition of a dispositive breach theory under Mississippi law in 1942.

Furthermore, this Circuit's own case law has subsequently clarified that non-compliance with an internal policy is evidence simply suggestive of breach of duty. In *Parker v. Wal-Mart Stores, Inc.*, albeit in an unpublished, per curiam, opinion, we directly stated that:

> Under Mississippi law, breach of one's internal policies
> may be considered in determining whether one has

> exercised the appropriate standard of care. . . . [H]owever,
> internal policies are only one consideration among many in
> that determination. . . . [W]e are not aware of any cases in
> which a party's violation of its own internal safety policies
> established a dangerous condition *per se.*

464 F. App'x 224, 227-28 (5th Cir. 2010) (internal quotation marks omitted) (citing *Steele*, 697 So. 2d at 377; *Boyd Tunica*, 30 So. 3d at 1253).

For these reasons, Keen's second argument also fails. Miller and Aerotek's non-compliance with their internal policies, which purportedly require background checks on all new hires, is not dispositive evidence of their breach of duty.

## C. Whether there is a genuine issue of material fact as to whether Miller and Aerotek should have known of Robertson's violent propensity.

Under Federal Rule of Appellate Procedure 28(a)(9)(A), the argument section of an appellant's brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." After all, Federal Rule of Civil Procedure 56 does not impose upon us or "'the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir. 1992)).[7]

Keen argues that she offered sufficient evidence to create a genuine issue of material fact as to whether Miller and Aerotek should have known of Robertson's propensity for violence. Accordingly, she argues that the district court should have permitted her to present her negligent hiring claims to the jury. In support of this argument, Keen cites to the report of her human

---

[7] Thus, to the extent that additional record evidence, or additional legal authorities pertaining to negligent hiring and liability for an employee's intentional torts, would have allowed Keen to advance beyond the summary judgment stage, Keen waived any arguments reliant on those authorities.

resources expert, which states that conducting background checks on all new hires is standard corporate practice, and to the testimony of a corporate representative for Miller, who affirmed that conducting background checks is Miller's standard practice.

Keen's argument relating to the report of her human resources expert is foreclosed by both Mississippi and Fifth Circuit precedent. As previously noted, the existence of a duty "in a negligence case is a question of law to be determined by the court." *Belmont Homes*, 792 So. 2d at 232 (citation omitted). Therefore, an expert report, without more, is insufficient "to establish a legal duty and a breach thereof" or to create a genuine issue of material fact as to duty. *Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 131 (Miss. 2003) (citations and footnote omitted). *Accord C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (applying Texas law). The report of Keen's human resources expert creates no genuine issue of material fact sufficient for Keen to withstand Miller and Aerotek's summary judgment motions.

The testimony of Miller's corporate representative is similarly unavailing. As explained above, non-compliance with an internal corporate policy or custom is evidence merely suggestive of breach of duty, not evidence dispositive of it. *See Boyd Tunica*, 30 So. 3d at 1253-54. Without more, the testimony does not necessarily create a genuine issue of material fact.

Here, the district court determined that Keen "cited no legal authority on which the Court may hold that Miller and Aerotek had a duty to inquire into Robertson's criminal history prior to hiring him to work on the oil spill clean-up pursuant to their contract." Despite 46 cumulative pages of appellate briefing, Keen has offered no cognizable legal authority on which to challenge that determination. Keen also has offered no cognizable record evidence, other than the testimony of Miller's corporate representative, to establish the existence of a genuine issue of material fact. While perhaps probative of negligent hiring,

the isolated testimony from the corporate representative simply is not enough for Keen to withstand summary judgment.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Miller and Aerotek.