# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01475-SCT

*MONICA LYN JUAREZ AND JAMES DAVID LARABEL*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                          08/24/2006
TRIAL JUDGE:                               HON. MARCUS D. GORDON
COURT FROM WHICH APPEALED:                 NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:                    EDMUND J. PHILLIPS, JR.
ATTORNEY FOR APPELLEE:                     OFFICE OF THE ATTORNEY GENERAL
                                           BY: LADONNA C. HOLLAND
DISTRICT ATTORNEY:                         MARK SHELDON DUNCAN
NATURE OF THE CASE:                        CRIMINAL - FELONY
DISPOSITION:                               AFFIRMED - 10/04/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Upon arriving at the apartment of Monica Lyn Juarez and James David Larabel, in response to a 911 call, officers from the Philadelphia Police Department smelled the scent of marijuana and saw a small amount of a "green, leafy substance" in a green tray lying in plain view. After procuring a search warrant, the officers found more than 200 grams of marijuana dispersed throughout the apartment. Following indictment[1] and trial with a jury

---

[1]Juarez and Larabel were indicted under Mississippi Code Annotated Section 41-29-139(c)(2)(C) (Rev. 2005) for possession of more than 30 grams but less than 250 grams of marijuana.

verdict of guilty, Juarez and Larabel were sentenced by the Circuit Court of Neshoba County. From that judgment proceeds this appeal.

**FACTS**

¶2. On April 26, 2005, Officer Patrick Mize of the Philadelphia Police Department was dispatched to 581 Center Avenue, Apartment #5, in response to a 911 call. Specifically, Mize testified that "[s]omeone called 911 and then hung up." Upon arriving at the apartment complex, Mize was joined by Officer Cliff Moore. Mize proceeded to knock on the front door and Juarez answered. According to Mize, "[o]nce she opened the door, I stepped inside . . . the entrance way in the living room. I noticed . . . [Larabel] . . . was running from the bathroom to the door where I was." According to the police report and Moore, Juarez and Larabel were both standing at the door when it was opened, and Larabel was "sweating, out of breath, real nervous acting." Mize testified that "[a]s soon as I entered the residence, I noticed on the right hand side on the table was some High Times magazines[,]" and he also "smelled a very strong odor of marijuana." "We asked [Larabel] if everything was all right. He said yeah, they just got in a verbal confrontation about some keys[,]" testified Moore. In accordance with department policy, Juarez and Larabel were then separated and interviewed individually to ensure no present threat existed. Mize interviewed Juarez two to three feet inside the apartment and Moore interviewed Larabel on the balcony. While interviewing Juarez, Mize noticed, in plain view, a green tray on the table along the back wall containing "a green, leafy substance which [he] believed to be marijuana[.]" After informing Moore of the green tray and its alleged contents, Mize contacted Chief Narcotics Officer Neal Higgason.

2

¶3.	Higgason testified that when he arrived, Mize and Moore "pointed out a green tray with a green leafy substance on it." Following inspection, Higgason believed the substance was marijuana. Higgason then asked Juarez and Larabel "for consent to search the apartment[,]" which both refused. Before leaving to procure a search warrant, Higgason instructed Moore "to secure their apartment and not let anyone enter or leave the premises[,]" and instructed Mize "to transport the two to the county jail for a misdemeanor possession of marijuana charge."[2]

¶4.	Subsequently, Municipal Judge Donnie Atkins issued a search warrant to Higgason.[3] According to Higgason, when he returned to the apartment Moore was still securing it and Mize had just returned. The three officers then proceeded to search the apartment. In

_____

[2]Higgason was unaware of whether Moore "sat inside the apartment or . . . stood at the door." According to Mize, "the apartment was shut and [Moore] stood by the door until we got back." Moore testified that while the front door was left unlocked, he "stayed in [his] patrol car where [he] had a visual on the front door[,]" and that no one entered or left the apartment during that time.

By contrast, Dawn Swain, the resident of the apartment directly below the apartment of Juarez and Larabel, testified at the suppression hearing that Moore took them to jail and Mize stayed behind. Furthermore, she averred that approximately five minutes after Moore and Higgason left, Mize re-entered the apartment. While Swain did not see Mize enter the apartment, she "could hear him upstairs." Although she acknowledged that there were two additional occupied apartments upstairs, Swain insisted that the walking she heard came from the apartment of Juarez and Larabel as "it was located right above [her] apartment." Swain was uncertain of how long Mize remained in the apartment, as she did not see him exit.

Before the jury, however, Swain testified that Mize took Juarez and Larabel to jail, while Moore and Higgason remained. She alleged that Higgason walked up the stairs to their apartment and she heard him walking around. Swain was uncertain of how long Higgason remained in the apartment, as she did not see him exit.

[3]Higgason admitted at trial that the underlying facts and circumstances presented to Judge Atkins stated that he had taken possession of the marijuana evidence in the green tray, placing it in an evidence bag. Higgason testified that it was actually during the subsequent search that he "processed the [marijuana in the green tray] at the scene."

addition to the 0.2 grams of marijuana in the green tray, Higgason found a Ziploc bag containing three smaller bags of marijuana, collectively weighing 163.7 grams, under the bathroom cabinet, and Moore discovered a bag containing 45.7 grams of marijuana in the kitchen cabinet.[4]

¶5.     Following the search, Higgason interviewed Juarez and Larabel individually. Neither of these interviews was videotaped. At trial, Higgason testified that he had videotaped one interview in the past. When asked by counsel for Juarez and Larabel if "the reason that you no longer video tape interviews [is] because you've been instructed not to[,]" the State objected. The State's objection was sustained. In their separate interviews, both Juarez and Larabel gave written statements in which they alleged that the retrieved marijuana belonged to "Bruce."

¶6.     On January 4, 2006, Juarez and Larabel were indicted for possession of marijuana "in an amount of more than 30 grams but less than 250 grams, in Neshoba County, Mississippi, contrary to and in violation of Section 41-29-139(c)(2)(C), Miss. Code Ann. (1972) . . . ." The jury trial commenced on August 23, 2006. At trial, Juarez and Larabel sought to suppress the State's exhibits arguing that:

> the search warrant is not proper based on the manner in which Mize and Moore obtained what they're alleging is evidence, being that they improperly were in the apartment. And secondly, . . . any fruit from the search warrant would be tainted in that someone, according to the testimony of Ms. Dawn Swain, was in this apartment at a time when, according to officers, they had secured the apartment.

Following a suppression hearing, the circuit court concluded that:

---

[4]In total, 209.6 grams of marijuana were retrieved from the apartment.

there's some different testimony between the officers but nothing material, or substantive, therefore, I feel that the [S]tate has sufficiently proven . . . the obtaining of the search. *The court is of the opinion that Judge Atkins acted properly in issuing the warrant pursuant to the underlying facts and circumstances presented to him by Officer Higgason.* Your objection is overruled. . . . [E]vidence of the search will be admitted.

(Emphasis added). Thereafter, the jury found Juarez and Larabel guilty.

¶7. On August 24, 2006, following the sentencing hearing, the judgment of the circuit court was entered. Juarez was "sentenced to serve a term of two years in the custody of the Mississippi Department of Corrections [("MDOC")], upon serving one year the remaining year is suspended, and . . . placed on three years post release supervision, pay a fine of fifteen hundred dollars and all costs of court."[5] Larabel was "sentenced to serve a term of three years in the custody of the [MDOC], pay a fine of fifteen hundred dollars and all costs of court."[6] After the "Motion[s] for a New Trial or Other Relief" of Juarez and Larabel[7] were overruled by the circuit court, each timely filed a notice of appeal.

## ISSUES

¶8. This Court will consider:

(1) Whether the circuit court erred in sustaining the State's objections to the cross-examination of Officer Higgason.

---

[5]The circuit judge entered this sentence in light of the fact that Juarez was pregnant, had no felony or misdemeanor record, and had good work experience.

[6]The circuit judge entered the maximum sentence because Larabel had "a criminal record, residential burglary, cocaine possession, all felonies . . . [and] a misdemeanor record of marijuana possession and disorderly conduct in Colorado."

[7]Each claiming that "[e]rror was committed in the failure to grant the Defendant's Motion to Suppress all Exhibits at trial and for a mistrial upon admission of each such exhibit."

5

(2) Whether the circuit court erred in denying the motion to suppress the results of the search of the apartment of Juarez and Larabel.

## ANALYSIS

### I. Whether the circuit court erred in sustaining the State's objections to the cross-examination of Officer Higgason.

¶9.    "The standard of review regarding admission [or exclusion] of evidence is *abuse of discretion*. Where error involves the admission or exclusion of evidence, this Court 'will not reverse unless the error *adversely affects a substantial right of a party*.'" **Whitten v. Cox**, 799 So. 2d 1, 13 (Miss. 2000) (quoting **Floyd v. City of Crystal Springs**, 749 So. 2d 110, 113 (Miss. 1999)) (emphasis added). *See also* **Jefferson v. State**, 818 So. 2d 1099, 1104 (Miss. 2002) (quoting **Hughes v. State**, 735 So. 2d 238, 270 (Miss. 1999) (citations omitted)) ("[u]nless the judge abuses this discretion so as to be *prejudicial to the accused*, the Court will not reverse this ruling.") (emphasis added). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible." Miss. R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. "Evidence is relevant if it has *any tendency to prove a consequential fact.*" **Whitten**, 799 So. 2d at 15 (emphasis added).

¶10.    Juarez and Larabel argue that the circuit court committed reversible error in sustaining the State's objection to their cross-examination of Higgason regarding whether he had been instructed not to videotape interviews. They argue that "[c]ertainly [their] inquiries covered

6

relevant subject matter." We do not agree. In Juarez and Larabel's written statements, they both alleged that the marijuana belonged to "Bruce." Since there is no dispute regarding the substance of either the interviews or the written statements, the issue of videotaping the interviews is irrelevant to guilt or innocence here. No substantial right belonging to Juarez or Larabel was affected. Therefore, this Court concludes that the circuit court did not abuse its discretion in sustaining the State's objection.

**II. Whether the circuit court erred in denying the motion to suppress the results of the search of the apartment of Juarez and Larabel.**

¶11. The State insists that "this issue is barred from consideration because [Juarez and Larabel] failed to submit the search warrant affidavit with the record." According to the State, "[w]ithout the affidavit, this honorable Court cannot determine whether a false statement was in fact made *nor whether the allegedly false statement was necessary to the finding of probable cause*." (Emphasis added).

¶12. "[T]here is a presumption that the judgment of the trial court is correct and the burden is on the Appellant to demonstrate some reversible error to this Court." *Acker v. State*, 797 So. 2d 966, 971 (Miss. 2001) (quoting *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)). "We have stated many times that it is the duty of the appellant to present a record of trial which is sufficient to support his assignments of error." *Acker*, 797 So. 2d at 971 (quoting *Peterson v. State*, 518 So. 2d 632, 638 (Miss. 1987) (citations omitted)). In *Acker*, this Court found that "[t]here is no hearing transcript, and therefore no basis to support Acker's claim that the trial court erroneously denied her motion. Because of this fact, the presumption that the judgment of the trial court was correct must prevail." *Id*.

¶13. The search warrant affidavit is absent from the record before us. Without the contested affidavit, this Court is unable to determine whether probable cause existed *vel non*. *See Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 2684-85, 57 L. Ed. 2d 667, 682 (1978). As Juarez and Larabel have the duty "to present a record of trial which is sufficient to support [their] assignments of error[,]" *Acker*, 797 So. 2d at 971, and there is a "presumption that the judgment of the trial court was correct[,]" *id*., this Court finds that the absence of the search warrant affidavit requires affirming the circuit court's denial of the motion to suppress.

## CONCLUSION

¶14. Accordingly, this Court affirms the final judgment and sentence of the Circuit Court of Neshoba County as to Juarez and Larabel.

¶15. **MONICA LYN JUAREZ: CONVICTION OF POSSESSION OF MORE THAN 30 GRAMS OF MARIJUANA AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON SERVING ONE (1) YEAR THE REMAINING YEAR IS SUSPENDED, AND JUAREZ IS PLACED ON THREE (3) YEARS POST RELEASE SUPERVISION, PAY A FINE OF FIFTEEN HUNDRED DOLLARS AND ALL COSTS OF COURT.**

**JAMES DAVID LARABEL: CONVICTION OF POSSESSION OF MORE THAN 30 GRAMS OF MARIJUANA AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF FIFTEEN HUNDRED DOLLARS AND ALL COSTS OF COURT, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**