IRVING, J.,
 

 for the Court:
 

 ¶ 1. Boyd Tunica, Inc., d/b/a Sam’s Town Hotel and Gambling Hall (Boyd Tunica) appeals from a final judgment of the Circuit Court of Tunica County awarding Ruth Beasley Latting
 
 [1]
 
 $250,000 in damages for injuries that Ruth sustained while riding as a passenger on a shuttle bus owned by Premier Transportation Services, Inc. (Premier) that was involved in a near-collision with a pickup truck owned by Boyd Tunica and operated by one of its employees.
 
 [2]
 
 Following a trial, a jury awarded Ruth $250,000 in damages, after assessing one-hundred percent of the fault against Boyd Tunica. Feeling aggrieved, Boyd Tunica appeals and asserts that the circuit court erred by refusing to grant certain jury instructions and by refusing to grant its motion for a new trial.
 
 [3]
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On January 11, 2005, Ruth boarded a twenty-five-passenger shuttle bus in the parking lot of Hollywood Casino in Tunica, Mississippi, bound for Sam’s Town Casino. She sat on the front seat and did not fasten her seat belt. While en route to Sam’s Town, Frank Weeden, the driver of the shuttle bus, forcefully applied his brakes in order to avoid colliding with a pickup truck that had pulled out in front of him. The pickup truck was driven by John Sevier, an employee of Sam’s Town. Ruth was thrown from her seat and into the dashboard of the bus, resulting in three of her ribs being broken.
 

 ¶ 4. Thereafter, on September 12, 2005, Ruth instituted a personal injury action against Boyd Tunica and Premier in the Tunica County Circuit Court to recover damages for her injuries. On February 25, 2008, Boyd Tunica filed a motion in limine to
 

 admit evidence of availability of and provision for seat belts in this case under the exception to [Mississippi Code Annotated section] 63-2-3 recognized by the Mississippi Supreme Court and to take judicial notice under [Rule 201 of the Mississippi Rules of Evidence] that the shuttle bus in which Plaintiff Ruth Beasley Latting was a passenger was a carrier of passengers for hue under Mississippi law.
 

 Thereafter, on February 27, 2008, Premier filed a motion in limine to exclude all reference to seat belts, arguing that Mississippi Code Annotated section 63-2-3 (Rev.2004) provides that evidence of the failure to wear seat belts is not admissible to prove negligence.
 

 
 *1246
 
 ¶
 
 5.
 
 The trial judge held a motion hearing on the morning of the first day of the trial and heard argument from both sides as to whether it would be proper to allow the jury to hear evidence regarding the use or non-use of seat belts. Then, immediately prior to opening statements, the trial judge stated that his “tentative ruling” was that evidence regarding seat-belt use and non-use would be allowed, subject to a cautionary instruction that the evidence could not be used to assess fault to Ruth as the party responsible for the cause of her injuries. The trial proceeded as scheduled. After testimony was complete and the attorneys were presenting the proposed jury instructions to the court, the trial judge said, “D-2 is given.” However, while reading instruction D-2 to the jury, the trial judge realized that he had not intended to give instruction D-2, as it conflicted with instruction P-11. The trial judge said:
 

 Disregard that last instruction. That’s not proper law. That’s going to be withdrawn. That’s going to be refused.
 

 I read one earlier instructing you not to consider evidence of seat[-]belt use or non-use to determine liability or damages against the plaintiff, Ruth Beasley, or the fault of Premier Transportation.
 

 ¶ 6. Thereafter, as stated, on May 6, 2008, the jury returned a verdict against Boyd Tunica in the amount of $250,000. The court entered its judgment on May 10, 2008.
 
 [4]
 
 Following issuance of the judgment, Boyd Tunica filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied by the trial court on June 6, 2008. On June 24, 2008, Boyd Tunica filed a notice of appeal, which reads as follows:
 

 BY THIS NOTICE, pursuant to Rule 3 of the Mississippi Rules of Appellate Procedure, to the Circuit Clerk of Tuni-ca County, Mississippi, Ms. Sharon Granberry, P.O. Box 184, Tunica, Mississippi,
 
 against the plaintiff, Ruth Beasley,
 
 from the final judgment entered in this case on May 18, 2008, and the denial of the Motion for Judgment Notwithstanding the Verdict or, in the alternative, for New Trial, by order entered on June 6, 2008.
 

 (Emphasis added). As will be discussed later in more detail, Ruth did not file a cross-appeal against Premier.
 

 ¶ 7. On July 13, 2009, eighteen days after the final brief was filed in this appeal, the trial court entered an order, pursuant to a settlement agreement between Ruth and Boyd Tunica, substituting Boyd Tuni-ca for Ruth. On July 17, 2009, Boyd Tunica filed a document in this Court, entitled “Motion for Partial Voluntary Dismissal.” In the motion, Boyd Tunica asked that the instant appeal as to Ruth be dismissed. On August 28, 2009, this Court granted Boyd Tunica’s motion.
 
 [5]
 

 ¶ 8. It is against the backdrop of this unique set of facts that we consider the issues presented in this appeal.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 9. We observe at the outset that the unusual post-appeal proceedings in this case raise a serious question regarding the viability of this appeal. Therefore, before addressing the issues presented, we find it necessary to discuss the implications of the post-appeal proceedings.
 

 
 *1247
 
 ¶ 10. As noted, more than a year after the trial court had lost jurisdiction of this case, it entered an order allowing the substitution of Boyd Tunica for Ruth. Clearly, this order is null and void because the trial court’s jurisdiction ended on June 24, 2008, when the notice of appeal was filed. However, the order entered by this Court is another matter. As stated, in the motion filed by Boyd Tunica with this Court, it asked that Ruth’s appeal be dismissed and that Boyd Tunica be substituted in her place. Inasmuch as Boyd Tunica’s appeal, according to its own notice, was against Ruth only, the effect of the substitution is to make Boyd Tunica both the appellant and the appellee. In other words, Boyd Tunica is now pursuing an appeal against itself. As Ruth’s assignee, Boyd Tunica has stepped into her shoes and possesses whatever claim or claims that she possessed at the time of the assignment. Since the case had already proceeded to judgment at the time of the assignment, Ruth possessed at that time the right to be paid $250,000, subject to the outcome of this appeal. However, even if Boyd Tuni-ca’s appeal is successful, Ruth, on remand, cannot pursue any claim against Premier because she did not file a cross-appeal against Premier. Likewise, Boyd Tunica, independent of the assignment from Ruth, cannot pursue any claim against Premier because Boyd Tunica appealed against Ruth only.
 

 ¶ 11. We are fully aware that Premier entered its appearance in this appeal and filed a brief. Nevertheless, we do not find that this action made it a party to this appeal, since it was not made a party pursuant to Rule 8(c) of the Mississippi Rules of Appellate Procedure, which states in part: “The notice of appeal shall specify the party or parties taking the appeal and the party or parties against whom the appeal is taken, and shall designate as a whole or in part the judgment or order appealed from.” As stated, Boyd Tunica’s notice of appeal specifies that the appeal is taken against Ruth only. As noted, Ruth did not file a cross-appeal against Premier, even though she could have done so if she felt aggrieved by the trial court’s failure to instruct the jury regarding Premier’s heightened duty of care that it owed her.
 
 [6]
 

 ¶ 12. Although, for the reasons expressed, it is questionable as to whether this appeal is viable, nevertheless, we address the merits of it. As stated, Boyd Tunica contends that the jury was not properly instructed and that it should have been granted a new trial, because the court misled it with respect to what it could expect by way of jury instructions. We address these contentions in turn.
 

 1. Jury Instructions
 

 ¶ 13. Boyd Tunica asserts that the trial court erred in refusing two of its proposed jury instructions, D-l and D-2. Boyd Tu-nica further asserts that the proposed instructions were necessary in order to properly instruct the jury as to the heightened standard of care that Premier, as a common carrier, owed to Ruth.
 
 [7]
 

 ¶ 14. It is clear in this state that “[a] party is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would sup
 
 *1248
 
 port the instruction.”
 
 Southland Enter., Inc. v. Newton County,
 
 838 So.2d 286, 289 (¶ 8) (Miss.2003) (citing
 
 Tharp v. Bunge Corp.,
 
 641 So.2d 20, 26 (Miss.1994)). Also, the Mississippi Supreme Court has held that “all instructions as a whole must be read to determine whether a jury has been correctly instructed.”
 
 Glorioso v. Young Mens Christian Ass’n of Jackson,
 
 556 So.2d 293, 295 (Miss.1989) (citing
 
 Jackson v. Griffin,
 
 390 So.2d 287, 290 (Miss.1980)). Further, “[a]ll instructions taken as a whole must fairly announce the applicable primary rules of law.”
 
 Id.
 
 (citing
 
 Allen v. Blanks,
 
 384 So.2d 63, 65 (Miss.1980)). Finally, “the trial court has considerable discretion in instructing the jury.”
 
 Southland Enter.,
 
 838 So.2d at 289 (¶ 9) (citing
 
 Splain v. Hines,
 
 609 So.2d 1234, 1239 (Miss.1992)).
 

 ¶ 15. Premier argues that Boyd Tunica never tendered proposed jury instruction D-l to the trial court. As might be expected, Boyd Tunica disagrees and asserts that it presented the following unnumbered instruction, which is in fact instruction D-l:
 

 The Court instructs the jury that you may consider the fact that co-defendant Premier Transportation Services, Inc., was equipped with functional seat belts in accordance with Premier Transportation’s Tunica County Casino Shuttle Driver’s Guide for the purpose of determining whether Premier met its duty of care to its passenger, Ruth Beasley.
 
 However, you may not consider plaintiff’s use or non-use of seat belts in determining,
 
 (1) whether the plaintiff was at fault for her own injuries and/or, (2)
 
 whether plaintiff’s use or non-use of her seat belt caused her injury.
 

 (Emphasis added). We note that the above instruction is attached as exhibit “C” to Boyd Tunica’s posttrial motion. From our review of the record, we find that an instruction, which may have been the proposed instruction D-l, was presented to the court during the jury-instruction conference and denied. However, we are unable to determine whether the instruction that was presented was in fact D-l, because the trial court did not recite enough of the instruction for us to make that determination. On this point, the record reflects the following recitation with respect to the instruction: “The Court instructs the jury you may consider the fact the co-defendant was equipped with — front seat, [sic] accordingly.” At no point in the record was this instruction ever identified as D-l.
 

 ¶ 16. It is well-settled law that it is the responsibility of the appellant to present a record sufficient to support his assignments of error.
 
 Juarez v. State,
 
 965 So.2d 1061, 1065 (¶ 12) (Miss.2007) (citing
 
 Acker v. State,
 
 797 So.2d 966, 971 (¶ 19) (Miss.2001)). Since the record is insufficient to enable us to properly review the instruction in question, we find no merit to Boyd Tunica’s argument that the trial court erred in refusing to grant instruction D-l. Further, even if exhibit “C” is an accurate copy of instruction D-l that was presented to the trial court during the jury-instruction conference, we are unable to discern its usefulness to Boyd Tunica. As shown by its wording, the instruction identified as exhibit “C” not only would have instructed the jury that Ruth’s failure to buckle her seat belt could not be used as evidence against her, it also would have instructed the jury that Ruth’s failure to buckle her seat belt could not be used as evidence of the causation of her injuries. If the fact that Ruth’s seat belt was not fastened could not be considered in determining the causation of her injuries, we fail to perceive how Boyd Tunica was prejudiced by the trial court’s refusal to grant the instruction. It appears quite clear to us that the instruction identified as exhibit “C” is at odds with Boyd Tunica’s theory
 
 *1249
 
 of the case that Ruth’s injuries were caused not by its driver pulling' out in front of Premier’s shuttle bus, but by Ruth’s riding on the shuttle bus in the front seat with her seat belt unfastened. While a trial court has an obligation to see that a jury is properly instructed, it is not required to draft instructions for either party.
 
 Wilson v. State,
 
 936 So.2d 357, 363 (¶ 14) (Miss.2006). Here, Boyd Tunica did not offer an instruction consistent with its theory of the case. Therefore, for this additional reason, we find that the trial court did not err in not granting the instruction that is reflected in exhibit “C.”
 

 ¶ 17. As stated, Boyd Tunica also argues that the trial court erred in refusing to grant jury instruction D-2, which reads as follows:
 

 The Court instructs the jury that under the law of the State of Mississippi, a carrier of passengers for hire is required to exercise the highest degree of care and diligence for the safety of its passengers. If you find by a preponderance of the evidence that Premier Transportation negligently operated its shuttle bus which the driver, Frank Weeden, drove with the knowledge that Ruth Beasley was a front seat passenger who was not wearing a seat belt, and that this was contrary to the driver guidelines of Premier Transportation, Inc. and that further by operating the vehicle while Ruth Beasley was not wearing a seatbelt, defendant [Premier] [Transportation, through its driver, failed to exercise the highest degree of care and diligence for the safety of its passengers including Ms. Beasley, you should find for the plaintiff Ruth Beasley against him [sic].
 

 ¶ 18. According to Boyd Tunica, instruction D-2, along with instruction D-l, would have informed the jury that it could consider Premier’s violation of its seat-belt policy as evidence of Premier’s negligence. Premier’s seat-belt policy provides:
 

 The law requires that all front seat passengers and driver wear the seat belt while the vehicle is in motion. Wear your seat belt at all times, it’s the law. Premier Transportation insists that all passengers “buckle up.” Inform the company if you find anything wrong with the vehicle safety belts as you would with any other defect in the safety, comfort or operation of the vehicle.
 

 ¶ 19. We first observe that Premier’s seat-belt policy appears to be based on Premier’s mistaken notion that the law requires that its drivers and its front seat passengers fasten their seat belts at all times. This is not the case. Mississippi’s mandatory seat-belt law, codified as Mississippi Code Annotated sections 63-2-1 through 63-2-7 (Rev.2004), requires the operator, every front-seat passenger, and every child under seven years of age to wear their seat belts fastened when riding in a passenger motor vehicle. However, the seat-belt law defines a passenger motor vehicle as a “motor vehicle designed to carry
 
 fifteen (15) or fewer passengers
 
 including the driver ...” Miss.Code Ann. § 63-2-1(2) (Supp.2009) (emphasis added). The shuttle bus on which Ruth was riding when she was injured was designed to carry twenty-five passengers. Therefore, neither she nor the operator was required by law to have his seat belt fastened during operation of the shuttle bus.
 

 ¶ 20. Even if Premier’s shuttle bus had been subject to the mandatory seat-belt law and Premier had failed to provide a seat-belt-restraint system in its shuttle buses, it could not have been subjected to a claim of contributory negligence because of the provisions of Mississippi Code Annotated section 63-2-3 (Rev.2004), which provide:
 

 
 *1250
 
 This chapter shall not be construed to create a duty, standard of care, right or liability between the operator and passenger of any passenger motor vehicle which is not recognized under the laws of the State of Mississippi as such laws exist on the date of passage of this chapter or as such laws may at any time thereafter be constituted by statute or court decision.
 
 Failure to provide and use a seat[-]belt[-]restraint device or system, shall not be considered contributory or comparative negligence,
 
 nor shall the violation be entered on the driving record of any individual.
 

 (Emphasis added).
 

 ¶ 21. It is counterintuitive to suggest that the law would impose liability on Premier for violating its seat-belt policy when, in this instance, the law does not require that Premier even provide seat-belt restraints. However, even if the law required such restraints, Premier’s failure to provide them could not be used as evidence of Premier’s contributory or comparative negligence. Boyd Tunica seems to implicitly recognize this point, for it argues that Premier’s violation of its internal regulations serves as an “exception” to the law’s prohibition against considering non-use of seat belts as evidence of negligence in any form. We are not persuaded by this argument. It is clear to us that Premier’s seat-belt policy is predicated upon its mistaken notion of what the seat-belt law requires, rather than upon its desire to limit its exposure in tort actions, despite the requirements of the law. Even assuming the latter consideration was the basis for Premier’s seat-belt policy, it is again counterintuitive to suggest that a private policy that Premier established to limit its liability exposure from its passengers can be used against it to impose liability, not by one of its passengers, but by another with whom Premier does not share a mutual interest as it does with its passengers.
 

 ¶ 22. It has long been established in this state that “[t]he person charging negligence must show that the other party, by his act or omission, has violated some duty incumbent ... upon him and thereby caused the injury complained of.”
 
 Milner Enters., Inc. v. Jacobs,
 
 207 So.2d 85, 91 (Miss.1968). Because Premier did not owe a duty to Boyd Tunica, it could not have breached that duty and could not have caused any injury to Boyd Tunica. The question, however, is not whether Boyd Tunica was entitled to have the jury instructed regarding Premier’s duty of care to Boyd Tunica, but whether Boyd Tunica was entitled to have the jury properly instructed on the standard of care owed by Premier to Ruth.
 

 ¶ 23. During the pretrial hearing, the trial judge determined that Premier was a common carrier. In
 
 Erwin Mills, Inc. v. Williams,
 
 238 Miss. 335, 339, 118 So.2d 339, 341 (1960), our supreme court held that “[t]o constitute ... a common carrier, [one] must hold himself out as engaged in public service for all persons indifferently, so that he would be liable for refusal without excuse, to carry for all who might apply.” Further, in
 
 Lambert v. Lott,
 
 222 So.2d 816, 818 (Miss.1969) (quoting
 
 Teche Lines, Inc. v. Keyes,
 
 187 Miss. 780, 193 So. 620, 621 (1940)), the Mississippi Supreme Court held that “a common carrier by motor ... owes the duty to its passengers to exercise the highest degree of care and precaution for their safety that is consistent with the practical conduct of its business.”
 

 ¶ 24. It appears to us that Premier was a carrier of passengers for hire, rather than a common carrier, as it did not hold itself out as engaged in public transportation services genei'ally, available to all persons who might apply to ride. Rather, pursuant to a contract with Sam’s Town Casino to provide shuttle service
 
 *1251
 
 “along a fixed route,” it provided service only to people who wished to travel between the various casinos that Premier serviced. However, for the purpose of determining the standard of care owed by Premier to Ruth, it does not matter whether Premier is classified as a common carrier or as a carrier of passengers for hire, because both carriers’ standard of care to their passengers is the same. In
 
 Goodwin v. Gulf Transport Company,
 
 453 So.2d 1035, 1036 (Miss.1984), our supreme court held that a carrier of passengers for hire “is required to exercise the highest degree of care and diligence for the safety of its passengers.” The
 
 Goodwin
 
 court also held that “[a carrier of passengers for hire] may be held liable for personal injuries only where those have been caused by the carrier’s failure to exercise this highest degree of care.”
 

 ¶ 25. Thus, it is clear that Premier owed a duty to Ruth to exercise the highest degree of care to ensure her safety. Now that we have established the standard of care owed by Premier to Ruth, we return to the question at hand: did the trial court err in not granting instruction D-2.
 

 ¶ 26. Instruction D-2 states that “under the law of the State of Mississippi, a carrier of passenger[s] for hire is required to exercise the highest degree of care and diligence for the safety of its passengers.” That is a correct statement of the law. However, the balance of instruction D-2 is confusing, as it would have allowed the jury to find that Premier negligently operated the shuttle bus, even though there is no evidence in this record that Weeden negligently operated the shuttle bus.
 
 [8]
 
 There is evidence that Wee-den drove the shuttle bus with the knowledge that Ruth was not wearing a seat belt. However, that is not the same thing as negligently operating the shuttle bus. Further, instruction D-2 would have invaded the province of the jury by peremptorily instructing the jury that Premier, by operating the shuttle bus while Ruth was not wearing a seat belt, failed to exercise the highest degree of care and diligence for her safety. Finally, and most importantly, instruction D-2 would have shifted total liability for Ruth’s injuries to Premier, notwithstanding the fact that Boyd Tu-nica’s driver’s action of pulling out in front of the shuttle bus was the sole proximate cause of the abrupt stop that Weeden was forced to make. Therefore, we find that, based on the facts of this case, instruction D-2 was not proper, and the trial judge did not err in refusing to grant it.
 

 ¶ 27. Boyd Tunica’s final argument regarding jury instructions is that the trial court erred in granting instruction P-11, which provides: “You are instructed not to consider evidence of seat-belt use or non-use in determining liability and/or damages against the Plaintiff, Ruth Beasley, or the fault of Premier Transportation.” We have already found that the seat-belt law
 
 *1252
 
 does not apply to Ruth and the passengers that were on Premier’s shuttle bus. On this point, Boyd Tunica agrees. We have also found that even if the seat-belt law were applicable, evidence of Ruth’s non-use of her seat belt would not have been admissible, because the seat-belt law prohibits such admission. Again, Boyd Tuni-ca acknowledges as much. This fact notwithstanding, Boyd Tunica insists that the court erred in giving instruction P-11. As we understand Boyd Tunica’s argument, the problem with instruction P-11 is that it prohibited the jury from taking into consideration the heightened duty of care that Premier owed to Ruth.
 

 ¶ 28. There is no evidence in the record that Premier failed in any way to provide the highest standard of care to Ruth, unless operating the shuttle bus without making sure that she had fastened her seat belt can be considered such failure. As the seat-belt law contains no provisions that required Ruth to have her seat belt fastened, Boyd Tunica’s argument — that Premier failed to provide the requisite standard of care to Ruth — is predicated solely upon Premier’s driver’s guide, which contains Premier’s seat-belt policy and other provisions designed to ensure passengers’ safety. As stated, the seat-belt policy contains the following provision: “Premier Transportation insists that all passengers ‘buckle up.’ ” Other provisions of the driver’s guide instruct the driver regarding safety measures that must be followed. For example, in the section on safety, the driver is instructed to “[n]ever pull away from a stop until all passengers are seated.” In the section on bus-driving hints that will help avoid accidents, the driver is instructed to “[b]e sure all the passengers are
 
 securely seated
 
 before attempting to pull off from the curb.” Finally, in the section on passenger safety, the driver is instructed to “[r]emain stopped until all passengers are seated and/or have cleared the bus before proceeding from the curb.” As can be seen from the quoted passages, there is no provision in the driver’s guide that requires the driver to make sure a passenger has his seat belt fastened before the driver operates the bus. The admonition to the driver is to make sure that the passengers are seated or securely seated. While the seat-belt policy, which is one of the sections of the driver’s guide, states that Premier insists that all passengers buckle up, it stops short of placing the responsibility on the driver to ensure that the passengers’ seat belts are fastened. There is no evidence that Weeden failed to comply with the provisions that were applicable to him. For example, there is no evidence that Ruth was not firmly in her seat when he moved from the stop where he picked her up.
 

 ¶ 29. Nevertheless, assuming that the driver’s guide requires the operator to make sure that the front-seat passengers have their seat belts fastened, we cannot find that Weeden’s violation of this policy was either the proximate cause or a contributing cause of the abrupt stop that Weeden was forced to make. As stated, there is no evidence that Weeden operated the shuttle bus in a negligent manner. While it is true that if Ruth had had her seat belt fastened, she may not have been propelled into the dashboard of the shuttle bus, it is also true that if Boyd Tunica’s employee had not suddenly pulled out in front of the shuttle bus, Weeden would not have had to abruptly apply the brakes.
 

 ¶ 30. In support of its argument that instruction P-11 prohibited the jury from considering Premier’s violation of its internal safety regulations as evidence of its breach of duty to exercise the highest degree of care for Ruth’s safety, Boyd Tuni-ca directs our attention to several cases, including
 
 Moore ex rel. Moore v. Memorial Hospital of Gulfport,
 
 825 So.2d 658 (Miss.2002);
 
 Taylor v. Singing River Hospital
 
 
 *1253
 

 System,
 
 704 So.2d 75 (Miss.1997);
 
 Steele v. Inn of Vicksburg, Inc.,
 
 697 So.2d 373 (Miss.1997); and
 
 Chisolm v. Mississippi Department of Transportation,
 
 942 So.2d 165 (Miss.Ct.App.2005). We accept that the law in this state is that a breach of one’s internal policies may be considered in determining whether one has exercised the appropriate standard of care. Therefore, we see no need to discuss those cases. Suffice it to say that none of those cases are factually on all-fours with our case. None of those cases involved a putative joint tortfeasor.
 

 ¶ 31. Premier’s breach of duty, if indeed there was a breach, is not the proximate cause, or a proximate contributing cause, of Ruth’s injuries so as to make Premier liable for those injuries, because Boyd Tunica’s employee, not Premier’s driver, set in motion the chain of events that led to Ruth’s injuries. Had Boyd Tunica’s employee not driven his truck in the front of Premier’s shuttle bus, Ruth would have ridden to her destination with her seat belt unfastened and without incident. Furthermore, as we have stated, it would have been improper under section 63-2-3 to instruct the jury that the non-use of seat belts could be considered as conti’ibutory or comparative negligence. Boyd Tunica offers two rationales as a part of its argument that the statutory prohibition is inapplicable here. First, Boyd Tu-nica posits that notwithstanding the fact that Ruth’s non-use of her seat belt could not have been used to establish that she was at fault or that the non-use caused her injuries, granting instruction P-11 was error because it was not improper for the jury to be instructed that Ruth’s non-use of her seat belt could be considered in determining whether Premier, in not following its own policies, violated its duty of care to her. Second, Boyd Tunica suggests that the prohibition contained in section 63-2-3 does not apply, because the duty was imposed by Premier’s internal policy, not by statute.
 

 ¶ 32. With respect to Boyd Tuni-ca’s first point, we note that this argument fails to take into consideration that because of the unique fact situation involved, application of this general evidentiary principle is unavailing. We acknowledge that evidence may be admissible for one purpose while being inadmissible for another. The problem here, however, is that any instruction that would have informed the jury that it could consider Ruth’s non-use of her seat belt as evidence of Premier’s failure to comply with its heightened duty of care to her would also have had to instruct the jury that it could not consider her non-use of seat belts in determining whether she was at fault in causing her injuries and/or whether the non-use of seat belts caused her injuries.
 

 ¶ 33. As to Boyd Tunica’s second contention, we point out that it has presented no authority holding that the provisions in Premier’s driver’s guide, particularly the provisions regarding the seat-belt policy, create an exception to the statutory prohibition against considering non-use of a seat-belt as evidence of contributory or comparative negligence.
 
 [9]
 
 In the absence of such authority, we see no reason to hold that Premier’s voluntary enactment of a seat-belt policy, not required by statute, vitiates the protection that would be in place were its passengers required by statute to wear seat belts. In other words, we see no reason why Premier should be punished for insisting that its passengers wear seat belts, even though they are not re-
 
 *1254
 
 quired by law to do so. Therefore, we find that the trial court did not err in giving instruction P-11.
 

 2. Motion for a New Trial
 

 ¶ 84. An appellate court “will only reverse the denial of a motion for a new trial when the trial court has abused its discretion.”
 
 Davis v. Wal-Mart Stores, Inc.
 
 724 So.2d 907, 910 (¶ 11) (Miss.1998) (citing
 
 Daniels v. Wal-Mart Stores, Inc.,
 
 634 So.2d 88, 94 (Miss.1993)).
 

 ¶ 35. Boyd Tunica asserts that the trial judge erred in failing to grant its motion for a new trial because the trial court’s “reversal of its pretrial rulings resulted in unfair and substantial prejudice.” Specifically, Boyd Tunica argues that it “concentrated its defense on Premier’s failure to enforce its internal safety regulations.”
 

 ¶ 36. We find that Boyd Tunica is not entirely correct in asserting that the trial court reversed its pretrial ruling regarding whether evidence of seat-belt use and non-use would be allowed, subject to a cautionary instruction that the evidence could not be used to assess fault to Ruth as the party responsible for the cause of her injuries. Our review of the record reveals that the trial judge’s initial ruling was tentative and remained so throughout the trial. Therefore, it is puzzling to this Court how Boyd Tunica can assert that it concentrated its defense on Premier’s alleged violation of its internal regulations “in reliance on the circuit court’s ruling before the commencement of trial” when the trial judge clearly asserted that his ruling was tentative in nature. Furthermore, Boyd Tunica has failed to proffer what it would have done differently had it known what the trial judge’s final ruling would be. We find no merit to this issue.
 

 ¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS AND MAXWELL, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Although Ms. Latting is referred to in the record as Ruth Beasley, we have chosen to shorten the designation to Ruth. Thus, all of our references will be to Ruth, not Ruth Beasley or Latting.
 

 [2]
 

 . Subsequent to the filing of the appeal and the appellate briefs in this case, Ruth and Boyd Tunica "entered into an agreement whereby Ruth Beasley Latting released [Boyd Tunica] from all her claims arising from the subject incident and assigned to [Boyd Tuni-ca] all her rights and claims against [Premier].” Although Premier is listed as the appel-lee in this appeal, there is no explanation in the record as to why this is so because the notice of appeal designates Ruth as the party against whom the appeal is lodged.
 

 [3]
 

 .Boyd Tunica lists three issues. However, two of the issues involve the refusal of the circuit court to grant its requested jury instructions.
 

 [4]
 

 .
 
 The
 
 judgment provides, in part, that “judgment shall be entered in favor of Premier Transportation Services, Inc., and the [c]om-plaint shall be dismissed with prejudice as to Premier Transportation Services, Inc.”
 

 [5]
 

 . Although this Court granted Boyd Tunica’s motion, it did not direct that the caption be changed to substitute Boyd Tunica for Premier.
 

 [6]
 

 . Rule 4(c) of the Mississippi Rules of Appellate Procedure provides: “If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.”
 

 [7]
 

 . Boyd Tunica asserts in its brief that Premier acted as a common carrier; however, its proposed jury instruction D-2 refers to Premier as a carrier of passengers for hire.
 

 [8]
 

 . Although we have quoted instruction D-2 in its entirety, for the sake of convenience, we quote it again here:
 

 The Court instructs the jury that under the law of the State of Mississippi, a carrier or passenger for hire is required to exercise the highest degree of care and diligence for the safety of its passengers. If you find by a preponderance of the evidence that Premier Transportation negligently operated its shuttle bus which the driver, Frank Wee-den, drove with the knowledge that Ruth Beasley was a front seat passenger who was not wearing a seatbelt, and that this was contrary to the driver guidelines of Premier Transportation, Inc. and that further by operating the vehicle while Ruth Beasley was not wearing a seatbelt, defendant transportation, through its driver, failed to exercise the highest degree of care and diligence for the safety of its passengers including Ms. Beasley, you should find for the plaintiff Ruth Beasley against him [sic].
 

 [9]
 

 . Under the jurisprudence of this state, an appellate court is not required to consider an issue if the proponent of the issue fails to provide some authority in support of his position.
 
 Grenada Living Ctr., LLC v. Coleman,
 
 961 So.2d 33, 37 (¶ 14) (Miss.2007).